UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

ILENE L. PRICE,
DEAN G. WOOD,
MARGARET M. JOHNSON,
QUENTIN J. HALTON,
THOMAS A. REYNOLDS,
BARBARA D. REYNOLDS,
MARY A. JOHNSON,

        Plaintiffs,

        v.                              Case No. 05-C-0947

CAPITAL ONE BANK,

        Defendant.

---

DECISION AND ORDER GRANTING DEFENDANT'S RULE 7.4 MOTION TO SUPPLEMENT AUTHORITY TO SUPPORT ITS MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. # 64),  GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. # 30), AND DISMISSING CASE

Plaintiffs, Ilene L. Price, Dean G. Wood, Margaret M. Johnson, Quentin J. Halton, Thomas A. Reynolds, Barbara D. Reynolds, and Mary A. Johnson, on behalf of themselves and all others similarly situated brought a class action complaint against defendant, Capital One Bank, alleging violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681 *et seq* in connection with a mailing offering a Visa credit card.  Defendant answered the complaint and moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  Alternatively, defendant moved for summary judgment pursuant to Fed. R. Civ. P. 56.  Thereafter, defendant filed a Motion to Provide Supplemental Authority.  For the

reasons set forth below, Defendant's Motion for Judgment on the Pleadings and Motion to Provide Supplemental Authority will be granted.

FACTS

In July and August 2005, plaintiffs received a pre-approved credit card offer from defendant in the mail. These mailings were attached to the amended complaint as exhibits. Each mailing contains the terms of the offer, including 0% Intro Purchase APR until December 2005, 14.9% APR thereafter – whether the offer was for a Capital One Visa Card or a Capital One MasterCard – a $19 membership fee, the minimum balance due, zero transfer fees, and an expiration date for the offer. Each notifies consumers that "this offer is based on an initial assessment that I met Capital One's initial criteria for creditworthiness," as required by the FCRA. The mailings do not state a minimum line of credit.

DISCUSSION

Fed. R. Civ. P. 12(c) permits a party to move for judgment after the complaint and answer have been filed. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998); *see* Fed. R. Civ. P. 12(c). "Like Rule 12(b) motions, courts grant a Rule 12(c) motion only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *N. Ind. Gun*, 163 F.3d at 452 (quoting *Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). Thus, to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved. *Id*. These facts are viewed in the light most favorable to the nonmoving party, however, the facts set forth in the complaint which undermine the plaintiff's claim are not ignored. *Id*. The pleadings referenced in Rule 12(c) include the complaint, the answer, and any written

instruments attached as exhibits. *Id*. at 452-53. The Seventh Circuit Court of Appeals has interpreted "written instruments" to include documents such as affidavits, letters, contracts, and loan documentation. *Id*. at 453.

Here, the complaint alleges violation of § 1681b(c)(1)(B) of the FCRA. Under Section 1681b, a consumer reporting agency may issue a consumer report relating to a consumer if "the transaction consists of a firm offer of credit." The statutory language defines "firm offer of credit" as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. §1681a(l). Despite the seemingly inflexible nature of the term "firm," the statute expressly permits various types of conditional offers to pass muster as "firm" offers of credit. *See* § 1681a(l)(1-3). A firm offer of credit may be conditioned on a creditor's application of additional pre-selected criteria bearing on the consumer's credit-worthiness, verification that the consumer still satisfies the criteria initially used to choose the consumer for the offer, and the consumer's furnishing of pre-established collateral that was divulged to the consumer in the offer. § 1681a(l)(1-3).

If one accesses a credit report without rendering a firm offer of credit, a violation of § 1681b occurs. Plaintiffs allege that defendant's mailings do not constitute firm offers of credit because none of the mailings specify a minimum amount of credit offered. On the other hand, defendant seeks judgment on the pleadings, arguing that the FCRA does not require disclosure of a minimum amount of credit offered to extend a "firm offer of credit" pursuant to § 1681b.

3

A court must decide whether an offer of credit is a firm based on "the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 728 (7th Cir. 2004) (emphasis in original). If the court concludes that a mailing was a "guise for solicitation" rather than a legitimate credit offer, it does not constitute a firm offer of credit under the FCRA. *Id*. When making this determination, the *Cole* court examined the following factors: 1) whether credit approval is guaranteed; 2) the amount of credit offered; 3) the stated rate of interest and the method of computation; and 4) the range of establishments where the credit may be used. *Id*.

In *Cole*, the defendant accessed plaintiff's credit reports and then sent a mailing indicating that plaintiff was eligible to "receive a Visa or MasterCard with limits up to $2,000 as well as up to $19,500 in AUTOMOTIVE CREDIT!" *Id*. at 722. The mailing proceeded to delineate additional eligibility requirements and criteria, but clarified that the credit card was not guaranteed. Ultimately, the court found that the pleadings supported plaintiff's claim for relief based on the assertion that defendant's offer was a sham. *Id*. at 728. It did so due to the low amount of credit offered ($300), in conjunction with the strict limitation that the card could only be used toward vehicle purchase at one specific automobile dealership. *Id*. Such limitations "render[ed] it impossible for the court to determine from the pleadings whether the offer ha[d] value." *Id*.

The Seventh Circuit enunciated the standard for determining whether a mailing constitutes a "firm offer of credit" further in *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006). The appeals court clarified *Cole* to stand for the proposition that "to separate the use of credit data to sell products (forbidden) from the use of credit data

4

to make firm offers of credit (allowed)…a court must determine whether the offer has value as an extension of credit alone." *Id*. at 955. "If an offer might have utility for some consumers, the offer has sufficient value for purposes of the FCRA." *Zawacki v. Discover Fin. Servs.*, No. 06 C 4925, 2007 U.S. Dist. LEXIS 12655, *7 (Feb. 23, 2007) (citing *Perry v. First Nat'l Bank*, 459 F.3d 816, 825 (7th Cir. 2006)). An offer will have value to a consumer "if it is useful to the *normal* consumer." *Id*. (emphasis in original). Thus, "*Cole*'s objective was to separate *bona fide* offers of credit from advertisements for products and services." *Id*.

In *Perry v. First Nat'l Bank*, 459 F.3d 816, the Seventh Circuit considered several of the aforementioned factors as holding that a low credit limit ($250) subject to relatively substantial fees and interest rates could still have value to the normal consumer. The court noted that the Visa credit card offered by First National could be used "to purchase any products or services for which Visa is accepted." *Id*. at 825. Conversely, the credit offered in *Cole* only applied to the purchase of a vehicle at a specific automobile dealership. 389 F.3d at 728. Consequently, the court reasoned that the credit card offered by First National had value to consumers seeking to build a credit rating for the first time or reestablish good credit. *Perry*, 459 F.3d at 825. Thus, although an "offer does not need to be an attractive offer for the great majority of consumers, it must provide value for some consumers." *Id*.

Recent district court decisions have held that the FCRA does not require a minimum amount of credit to be stated in an offer letter for the letter to constitute a firm offer of credit. *King v. Commerce Bancshares, Inc.*, No. 06-C-4117, 2007 WL 781732, at *3 (N.D. Ill. Mar. 12, 2007); *Forrest v. Universal Savings Bank, F.A.*, No. 06-C-445, 2006

5

WL 3486913, at *3 (E.D. Wis. Dec. 1, 2006) (Goodstein, J.). In *Forrest*, the court held that it was clear that defendant offered credit, and that the offer had value because defendant informed plaintiff of other important information such as the interest rate and applicable fees. 2006 WL 3486913, at *4. Similar to the case at hand, the offer at issue in *Forrest* pertained to a pre-qualified Upfront Rewards Visa Platinum Card. *Id*. at *1.

The defendant in *King v. Bank Shares, Inc.*, sent the plaintiff a credit card offer that did not state the minimum amount of credit being offered. 2007 WL 781732, at *1. The plaintiff's claim that the offer letter was not a firm offer of credit. *Id*. The court distinguished the offer in *King* from the offer in *Cole*, noting that "the defendant's failure to explicitly state the minimum line of credit" did not render it impossible for the court to determine, as a matter of law, whether the credit card being offered had value to the normal consumer. *Id*. at *3. The court proceeded to hold that defendant clearly offered credit because it informed plaintiff of key information such as the interest rate and applicable fees. *Id*. Hence, the court found that the offer had value as an extension of credit and was thus a firm offer of credit. *Id*.

The mailings in the instant case encompass three of the four *Cole* factors listed above. The letters stated that plaintiffs had been "preapproved for a 0% APR on everything [they] bought for the next six months," 14.9% variable APR following the introductory period, and no balance transfer fees. The interest rate and the computation method during the introductory period and afterwards are stated on both sides of the mailing. Additionally, the mailings offer Visas and MasterCards, which are generally accepted wherever credit cards are accepted. The only factor not expressly satisfied by the mailing is the specific amount of credit offered.

6

There is no ambiguity whether the defendant's mailings offered lines of credit to plaintiffs. As opposed to the sham offer in controversy in *Cole*, defendant's failure to expressly state the minimum line of credit does not "render it impossible for a court to determine . . . whether the offer has value." *Cole*, 389 F.3d at 728. In cases holding that various offers were sham offers, defendants excluded multiple terms of the offer, subjected the offer to variable terms without notice, and put considerable restraints on the use of the offered credit. *See Id*. at 722-23, *Murray v. Finance America*; *LLC*, No. 05 C 1255, WL 862832 (N.D. Ill. 2006); *Kudlick v. Farragut Financial Corp.*, No. 05 C 2459, 2006 WL 927281 (N.D. Ill. 2006).

Like the mailings in *Perry*, 459 F.3d at 816, the mailings of the defendant included sufficient terms to convey that the offer had value for consumers and were firm offers of credit. In *Perry*, the mailing clarified that the offer included a guaranteed credit card and was accompanied by a brochure containing its terms. Although the terms of the offer would have been inauspicious to most consumers, the court held that the offer contained sufficient terms for the consumer to gauge the offer's value. *Id*. at 823-24. Moreover, the court held that possessing a widely accepted credit card has inherent value. *Id*.

Also, in the case at hand, the credit card offers provide sufficient terms for the court to determine that the credit cards being offered had value to the normal consumer. Thus, defendant's mailings are firm offers of credit under *Cole* and the Fair Credit Reporting Act. A widely accepted credit card with a 0% introductory APR and zero balance transfer fees was offered.

Now, therefore,

7

Case 2:05-cv-00947-CNC    Filed 05/22/07    Page 7 of 8    Document 65

IT IS ORDERED that defendant's Motion to Provide Supplemental Authority is granted.

IT IS FURTHER ORDERED that defendant's Motion for Judgment on the Pleadings is granted and that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 22nd day of May, 2007.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE